MDR

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Gene Gallagher, | No. CV 12-2311-PHX-DGC (BSB) |
| Plaintiff, | **ORDER** |
| vs. | |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff William Gene Gallagher, who is confined in the Arizona State Prison Complex-Florence in Florence, Arizona, has filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed *In Forma Pauperis* (Doc. 2). The Court will order Defendants Kendall, Folertino, and Parkerson to answer the Complaint and will dismiss the remaining Defendants without prejudice.

**I.     Application to Proceed *In Forma Pauperis* and Filing Fee**

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $10.82. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

**TERMPSREF**

1 **II.     Statutory Screening of Prisoner Complaints**

2    The Court is required to screen complaints brought by prisoners seeking relief against
3 a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C.
4 § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised
5 claims that are legally frivolous or malicious, that fail to state a claim upon which relief may
6 be granted, or that seek monetary relief from a defendant who is immune from such relief.
7 28 U.S.C. § 1915A(b)(1), (2).

8    A pleading must contain a "short and plain statement of the claim *showing* that the
9 pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not
10 demand detailed factual allegations, "it demands more than an unadorned, the-defendant-
11 unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).
12 "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
13 statements, do not suffice." Id.

14    "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a
15 claim to relief that is plausible on its face.'"  Id. (quoting Bell Atlantic Corp. v. Twombly,
16 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content
17 that allows the court to draw the reasonable inference that the defendant is liable for the
18 misconduct alleged."  Id.  "Determining whether a complaint states a plausible claim for
19 relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial
20 experience and common sense."  Id. at 1950.  Thus, although a plaintiff's specific factual
21 allegations may be consistent with a constitutional claim, a court must assess whether there
22 are other "more likely explanations" for a defendant's conduct.  Id. at 1951.

23    But as the United States Court of Appeals for the Ninth Circuit has instructed, courts
24 must "continue to construe *pro se* filings liberally."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th
25 Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards
26 than formal pleadings drafted by lawyers.'"  Id. (quoting Erickson v. Pardus, 551 U.S. 89,
27 94 (2007) (*per curiam*)).

28 . . . .

### III.   Complaint

In his one-count Complaint, Plaintiff sues the following Defendants: Arizona Department of Corrections Director Charles L. Ryan; Facility Health Administrator Dennis Kendall; Nursing Supervisors Grant and Jane Doe #2; Nurses Rafity, Tracy Folertino, Margie Parkerson, Ogilvie, Jane Doe #1, and Jane Doe #3; and Transportation Officers John Doe #1 and John Doe #2.

Plaintiff alleges a violation of the Eighth Amendment regarding his medical care, or lack thereof, after he injured his right shoulder and arm on April 1, 2009, while working in the prison. He claims that each of the Defendants was deliberately indifferent to his serious medical needs.

Plaintiff alleges as follows. Plaintiff went to the medical department on April 1, 2009, the day he was injured, and complained that he had severe pain in his right shoulder and numbness in his right arm and hand. Defendant Grant stated that the doctor would see Plaintiff if the doctor had time, but Plaintiff was not seen by the doctor and was told to return in five days. When he returned on April 6, 2009, Defendant Rafity called Plaintiff an idiot and told him to leave the medical department. Plaintiff filed an informal grievance on April 6th and was seen later that day by a physician's assistant who prescribed medications, ordered x-rays, and issued a "no-duty/no-work" special needs order.

A week later, Plaintiff's x-rays were taken and he was told to speak to a doctor about the results of the x-rays. A month later, on May 15, 2009, Plaintiff submitted a health needs request form, requesting an appointment with a doctor to discuss the x-ray results and his continuing severe pain and numbness.

Almost three months later, on August 10th, Plaintiff told Defendant Folertino that his pain medication had run out and that he still had severe pain. Plaintiff again requested a followup appointment with a doctor. On August 31st, Plaintiff submitted a health needs request form because Defendant Folertino still had not scheduled an appointment with the doctor and Plaintiff still was not receiving his pain medication. Plaintiff submitted another health needs request form on September 3rd, again requesting an appointment with a doctor.

He told Defendant Folertino on September 8th that he still had severe pain, did not have pain medication, and wanted to see a doctor. Plaintiff submitted another health needs request form on September 24th, again requesting to be seen by a doctor. On October 1st, he told Defendant Parkerson that he still had severe pain and needed to be seen by a doctor. On October 19th, Plaintiff submitted another health needs request form. He stated that he still had severe pain and need to be seen by a doctor, and, in addition, now had numbness in his upper back. Throughout this time, Defendants Folertino and Parkerson promised Plaintiff that he would be seen by a doctor. Plaintiff alleges that he was not seen by a doctor and his condition worsened.

On November 3, 2009, Plaintiff filed an informal grievance, again requesting an appointment with a doctor. The following day, more than seven months after his injury and almost three months after he informed prison officials that his pain medication had run out, Plaintiff was seen by a doctor. The doctor prescribed pain medications and submitted to Defendant Kendall an order for Plaintiff to have a computed tomography (CT) scan and an electromyogram (EMG).

Almost three months later, on January 28, 2010, Plaintiff submitted a health needs request form to find out when his CT scan and EMG would be scheduled. On February 18th, he filed an informal grievance in which he requested that the CT scan and EMG be scheduled, expressed concern that his condition was worsening, and noted that he still had severe pain and numbness. In a March 7th response, a correctional officer told Plaintiff that he could not resolve the issue at that level of the grievance process and suggested that Plaintiff proceed to the next level. On March 10th, the physician's assistant continued Plaintiff's "no-duty/no-work" special needs order and authorized a special needs order for Plaintiff to be placed in a lower bunk because Plaintiff had severe pain while climbing in and out of his upper bunk.

On March 22, 2010, Plaintiff filed a formal grievance with Defendant Kendall, asking why the CT scan and EMG had not been scheduled. The EMG was conducted on April 28th, almost thirteen months after his injury and almost six months after the doctor had ordered the

1    test, and showed that Plaintiff had an "inch of damage to the nerves." The CT scan was
2    conducted on May 28th, and showed that Plaintiff had herniated disks and that his disks were
3    out of alignment. The results of both tests were sent to Defendant Kendall. After the tests
4    had been completed, Defendant Kendall responded to the formal grievance and noted that
5    the tests had been completed.

6    On May 24, 2010, a doctor reviewed the EMG results and sent to Defendant Kendall
7    a "consult order" for Plaintiff to see a neurologist. On June 3rd, the doctor reviewed the CT
8    scan results and sent a second consult order to Defendant Kendall for Plaintiff to see a
9    neurologist.

10   On August 2, 2010, Plaintiff complained to a nurse about a new symptom of his
11   injury, severe pain in his neck. The nurse gave Plaintiff a special needs order for a cervical
12   collar to wear for four months. On October 7th, the nurse renewed the cervical collar special
13   needs order.

14   On November 8, 2010, Plaintiff submitted a health needs request form in which he
15   notified the medical staff that his pain medication had run out. The staff responded that the
16   issue had been "referred to health care provider." On January 17, 2011, Plaintiff filed
17   another health needs request form, asking when he would receive his pain medication. At
18   that point, Defendant Jane Doe #1 informed Plaintiff that he should come to the medical
19   department daily for the medication because the medical staff needed to watch him swallow
20   the medication. Plaintiff alleges that in the two months after he filed his November 8th
21   health needs request form, Defendant Jane Doe #1 had never told him that his medication
22   was available.

23   On March 3, 2011, Plaintiff filed an informal grievance, requesting to be seen by a
24   neurologist. Plaintiff was informed that Defendant Kendall had been contacted and the
25   appointment was "still pending approval and scheduling." On March 14th, a doctor saw
26   Plaintiff and submitted to Defendant Kendall yet another order for Plaintiff to be seen by a
27   neurologist. The doctor told Plaintiff to submit another health needs request after May 1st
28   if Plaintiff still had not been scheduled to be seen by a neurologist. On May 1st, Plaintiff

submitted another health needs request form. On May 2nd, the doctor submitted to Defendant Kendall another order for Plaintiff to be seen by a neurologist.

On May 26, 2011, Plaintiff filed an informal grievance, detailing the numerous attempts he, his doctor, and a corrections officer had made to schedule an appointment with a neurologist and explaining that he still had severe pain. Plaintiff was told that Defendant Kendall had been contacted and that the approval was still pending. Plaintiff alleges that although Defendant Kendall had been repeatedly informed of Plaintiff's continuing pain and need for medical treatment, Defendant Kendall responded on June 3rd that he had spoken to Defendant Jane Doe #2, who had told him that "a medical consult was done on March 11, 2011, and [had been] forwarded to the clinical coordinator for approval and scheduling" and that the appointment with the neurologist was "non-urgent."

On July 19, 2011, Plaintiff submitted a health needs request form, stating that his pain medication was not lasting through the night and that he was waking up during the night because of the severe pain. Defendant Ogilvie responded that Plaintiff was "to be scheduled on HCP line."

On July 28, 2011, Plaintiff filed an informal grievance. He requested an appointment with a neurologist. He recounted his efforts to see a neurologist and explained that he still had severe pain and numbness, that his condition was worsening, and that he was concerned that the failure to properly treat his injury would result in permanent damage. Plaintiff was told that Defendant Kendall had "confirmed an MRI consult and neurologist appointment."

On August 18, 2011, Plaintiff filed another health needs request, stating again that his pain medication was not lasting through the night and requesting a followup appointment with a doctor to discuss the issue. Defendant Ogilvie responded that Plaintiff was "to be scheduled on HCP line."

On August 27, 2011 Plaintiff's pain medication ran out. He explained to a nurse that the prescription was good until September 13th and that, moreover, Defendant Ogilvie had told him that he did not need to submit a health needs request form for his pain medication because it was "done automatically." Plaintiff was told that the pain medication should have

1  arrived on August 26th, but did not, and that there would be no pain medication until the next
2  shipment arrived on August 29th.

3  On September 7, 2011, Plaintiff was scheduled to see the doctor about his pain
4  medication not lasting throughout the night. However, Defendant Jane Doe #3 cancelled the
5  appointment and told Plaintiff that he could wait on standby to see if the doctor had time to
6  see him. Plaintiff waited five hours before being told that the doctor would not see him that
7  day. Plaintiff's appointment was rescheduled for September 12th. At the appointment, the
8  doctor renewed the special needs orders, ordered medication for Plaintiff to "keep on person"
9  for nighttime use, and called Defendant Kendall to confirm that the MRI consultation and
10 neurologist appointment had been scheduled.

11 On September 15, 2011, Plaintiff filed a health needs request form because the
12 medical staff was not giving Plaintiff the "keep on person" medication that the doctor had
13 ordered. On September 21st, he file another health needs request form, stating that the
14 medical staff was not acting in a timely manner to address his injury and pain. He filed an
15 informal grievance the same day regarding his problems receiving the "keep on person"
16 medication and being scheduled by Defendant Kendall to see a neurologist. Plaintiff was
17 sent to the medical unit, where a nursing supervisor scheduled Plaintiff to be seen by a
18 doctor.

19 On September 20, 2011, almost thirty months after his injury and seventeen months
20 after the doctor ordered Plaintiff to be seen by a neurologist, Plaintiff went to the hospital for
21 an MRI and consultation with a neurologist. Plaintiff received the MRI, but he did not see
22 the neurologist because Defendants John Doe #1 and John Doe #2 transported him back to
23 the prison prematurely.

24 On September 21, 2011 Plaintiff filed an informal grievance stating that he did not see
25 a neurologist and that the informal grievance was a notice of his intent to file a lawsuit
26 because Defendant Kendall was not taking his medical needs seriously. Plaintiff was told
27 that Defendants John Doe #1 and John Doe #2 were "at fault" for preventing Plaintiff from
28

seeing the neurologist and that a doctor's appointment had been scheduled to resolve his pain medication issues.

On November 20, 2011, Plaintiff filed another informal grievance. He requested a consultation with a neurologist, detailed the events preceding the grievance, stated his intent to file a formal grievance, and indicated his concern that deliberate indifference by the medical staff was causing permanent damage to his body. Plaintiff was seen by a neurosurgeon on December 13th, almost thirty-three months after his injury and almost nineteen months after the doctor ordered the consultation. The neurologist ordered an epidural steroid injection.

On February 2, 2012, Plaintiff filed a formal grievance with Defendant Kendall. Plaintiff complained that his medical injury had not been properly treated, explained the doctors' findings and the treatment the neurosurgeon had ordered, requested that he receive the epidural injection, and sought damages for the pain and suffering and additional harm he suffered from the delays and denial of treatment by Defendant Kendall and the medical staff. In a February 21th response, Defendant Kendall stated that Plaintiff would be given an appointment to receive the epidural injection in April (four months after the neurosurgeon ordered it) and did not address any of the other issues raised in the grievance.

On March 5th, Plaintiff filed a grievance appeal with Defendant Ryan. He stated that the neglect, delay, and denial of medical treatment for his serious injury had caused him unnecessary pain and suffering. He also stated that in thirty-five months, the medical staff had only identified his problem and, other than inconsistently providing pain medication, had done nothing to treat his problem. Plaintiff requested treatment for his serious medical issue and sought monetary damages for his pain and suffering. On April 10th, Defendant Ryan denied the grievance appeal, claiming that a review of the medical records showed no evidence of neglect, and denied the request for damages.

On April 9, 2012, Plaintiff had an appointment with a neurologist who ordered an epidural steroid injection as soon as possible. On May 7th, Plaintiff submitted an inmate letter, requesting information about when he would receive the injection. A correctional

1  officer told him that the correctional officer would get back to him with an answer. On
2  June 12th (two months after the date Defendant Kendall said Plaintiff would receive the
3  injection), Plaintiff wrote an inmate letter to Defendant Kendall asking when he would
4  receive the injection. Defendant Kendall responded that a "consult for injection" was
5  "pending."

6  On June 22, 2012, Plaintiff filed a health needs request form. He stated that in
7  addition to his ongoing numbness and pain, he now had spasms and involuntary head and
8  arm movements. He stated that his injury was worsening and might be beyond repair,
9  requested the injection ordered by the neurologist, and requested an appointment with a
10 doctor regarding his new symptoms. Plaintiff was told that a followup appointment was
11 scheduled regarding the new symptoms and that they were waiting for an appointment for
12 the injection. However, on July 5th, a nurse told Plaintiff that there was no request for a
13 followup visit with a doctor in Plaintiff's file, although he was scheduled for a chronic care
14 visit in September.

15 On August 22, 2012, a doctor examined Plaintiff regarding his spasms and sudden arm
16 and head movements, and prescribed a muscle relaxant. On August 27th, almost three-and-a-
17 half years after Plaintiff's injury and almost nine months after the neurosurgeon ordered the
18 epidural steroid injection, Plaintiff received an epidural steroid injection.

19 Plaintiff contends that his medical issues are still ongoing. On September 12, 2012,
20 he submitted a health needs request form in which he stated that his condition had not
21 changed and that he still had pain. He requested that his special needs orders be continued
22 until a doctor could see him regarding his chronic care issues. The special needs orders were
23 continued for three months.

24 Plaintiff seeks a jury trial, declaratory and injunctive relief, monetary damages, and
25 his costs of suit.

26 **IV.     Failure to State a Claim**

27 Not every claim by a prisoner relating to inadequate medical treatment states a
28 violation of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a

1  plaintiff must show that the defendants acted with "deliberate indifference to serious medical
2  needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429
3  U.S. 97, 104 (1976)).  A plaintiff must show (1) a "serious medical need" by demonstrating
4  that failure to treat the condition could result in further significant injury or the unnecessary
5  and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.
6  Jett, 439 F.3d at 1096 (quotations omitted).

7  "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051,
8  1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know
9  of and disregard an excessive risk to inmate health; "the official must both be aware of facts
10  from which the inference could be drawn that a substantial risk of serious harm exists, and
11  he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate
12  indifference in the medical context may be shown by a purposeful act or failure to respond
13  to a prisoner's pain or possible medical need and harm caused by the indifference. Jett, 439
14  F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally
15  denies, delays, or interferes with medical treatment or by the way prison doctors respond to
16  the prisoner's medical needs. Estelle, 429 U.S. at 104-05; Jett, 439 F.3d at 1096.

17  Deliberate indifference is a higher standard than negligence or lack of ordinary due
18  care for the prisoner's safety. Farmer, 511 U.S. at 835. "Neither negligence nor gross
19  negligence will constitute deliberate indifference." Clement v. California Dep't of
20  Corrections, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); see also Broughton v. Cutter
21  Labs., 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or
22  "medical malpractice" do not support a claim under § 1983).  "A difference of opinion does
23  not amount to deliberate indifference to [a plaintiff's] serious medical needs." Sanchez v.
24  Vild, 891 F.2d 240, 242 (9th Cir. 1989).  A mere delay in medical care, without more, is
25  insufficient to state a claim against prison officials for deliberate indifference. See Shapley
26  v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). The indifference
27  must be substantial.  The action must rise to a level of "unnecessary and wanton infliction
28  of pain." Estelle, 429 U.S. at 105.

Plaintiff alleges that Defendant Grant was deliberately indifferent because she failed to provide an immediate appointment with a doctor on the day Plaintiff was injured and failed to provide pain medication and that Defendant Rafity was deliberately indifferent because she denied Plaintiff an appointment with the doctor. Plaintiff claims that Defendant Jane Doe #1 was deliberately indifferent because she failed to notify Plaintiff that his pain medication was available on the "watch swallow" line and that Defendant Jane Doe #3 was deliberately indifferent because she cancelled Plaintiff's appointment with the doctor because she believed his appointment was not as important as other inmates' medical needs and made him wait five hours on standby to see if the doctor would be available. None of these acts or omissions rises to the level of deliberate indifference. Thus, the Court will dismiss without prejudice Plaintiff's claims against Defendants Grant, Rafity, Jane Doe #1, and Jane Doe #3.

The Court will also dismiss without prejudice Plaintiff's claim that Defendants John Doe #1 and John Doe #2 were deliberately indifferent because they returned Plaintiff to the prison before he was seen by a neurologist. At best, Plaintiff has demonstrated that these Defendants were negligent in returning Plaintiff to the prison prematurely. The Court will dismiss without prejudice Plaintiff's claims against Defendants John Doe #1 and John Doe #2.

Plaintiff alleges that Defendant Jane Doe #2 was deliberately indifferent because she failed to inform Defendant Kendall "of all [of Plaintiff's] serious medical injury needs," delayed or denied his access to necessary medical consultations and treatments, and failed to provide him with pain medication when his pain medications ran out. But Plaintiff's only factual allegations against Defendant Jane Doe #2 are that she informed Defendant Kendall that a "medical consult" had been done and had been forwarded to a clinical director and that the appointment with the neurologist was "non-urgent." Plaintiff's allegations against Defendant Jane Doe #2 might constitute a difference of opinion regarding the urgency of Plaintiff's need for an appointment with a neurologist, but they do not rise to the level of

1  deliberate indifference. Therefore, the Court will dismiss without prejudice Plaintiff's claim
2  against Defendant Jane Doe #2.

3        Plaintiff alleges that Defendant Ogilvie was deliberately indifferent because she failed
4  to schedule a followup appointment to review Plaintiff's pain medications and failed to
5  timely order his pain medications. Plaintiff's factual allegations, however, indicate that when
6  Plaintiff filed health needs request forms regarding his pain medication not lasting through
7  the night, Defendant Ogilvie stated that Plaintiff would be "scheduled on [the] HCP line."
8  This does not rise to the level of deliberate indifference to his medical needs. Moreover, to
9  the extent Plaintiff is alleging that Defendant Ogilvie was somehow involved in Plaintiff's
10 pain medication not arriving on August 26, 2011, Plaintiff has failed to demonstrate how
11 Defendant Ogilvie's conduct rose to the level of deliberate indifference to his medical needs.
12 Thus, the Court will dismiss without prejudice Plaintiff's claims against Defendant Ogilvie.

13       Plaintiff also contends that Defendant Ryan was deliberately indifferent because he
14 failed to address the issues raised in Plaintiff's grievance appeal. Plaintiff's allegations
15 against Defendant Ryan only relate to Defendant Ryan's denial of Plaintiff's grievance
16 appeal and, therefore, are insufficient to state a claim against Defendant Ryan. See Shehee
17 v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (defendants did not commit constitutional
18 violations when they denied administrative grievances, failed to intervene on plaintiff's
19 behalf, and failed to remedy allegedly unconstitutional behavior). Thus, the Court will
20 dismiss without prejudice Plaintiff's claim against Defendant Ryan.

21 **V.      Claims for Which an Answer Will be Required**

22       Plaintiff alleges that Defendant Kendall was deliberately indifferent to Plaintiff's
23 serious medical needs because he failed to schedule medical tests, consultations, and
24 treatments in a timely manner and failed to address issues presented in Plaintiff's grievance
25 appeal. Plaintiff alleges that Defendants Folertino and Parkerson were deliberately
26 indifferent because they failed to schedule a followup appointment with a doctor so Plaintiff
27 could discuss his x-ray results and obtain pain medications. Plaintiff has stated Eighth
28

Amendment deliberate indifference claims against Defendants Kendall, Folertino, and Parkerson. The Court will require these Defendants to answer the Complaint.

## VI. Warnings

### A. Release

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

### B. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C. Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's Application to Proceed *In Forma Pauperis* (Doc. 2) is **granted**.

(2) As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $10.82.

  (3) Defendants Ryan, Grant, Rafity, Ogilvie, Jane Doe #1, Jane Doe #2, Jane Doe #3, John Doe #1, and John Doe #2 are **dismissed** without prejudice.

  (4) Defendants Kendall, Folertino, and Parkerson must answer the Complaint.

  (5) The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants Kendall, Folertino, and Parkerson.

  (6) Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

  (7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

  (8) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

  (9) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

(a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10) **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11) Defendants Kendall, Folertino, and Parkerson must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13) This matter is referred to Magistrate Judge Bridget S. Bade pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 29th day of November, 2012.

*David G. Campbell*
David G. Campbell
United States District Judge